IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSE FREMONDE XENOS, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PAUL SINGLEY, et al., | : | No. 11-1550 |
| Defendants. | : | |

### MEMORANDUM

Schiller, J.                                                                                       September 21, 2012

Jose Fremonde Xenos, proceeding pro se, brings a § 1983 claim for unlawful intensive probation supervision and unlawful arrest against Probation Officer Paul Singley, Chief Adult Probation Officer Marie Bartosh, the Northampton County Department of Adult Probation, and the County of Northampton.[1] Currently before the Court is Defendants' motion to dismiss for failure to state a claim. For the reasons set forth below, Defendants' motion is granted.

### I.     BACKGROUND

On August 16, 2007, Xenos pleaded nolo contendere to felony forgery in the third degree and was sentenced to three to eighteen months incarceration with credit for time served, followed by twenty-four months of probation. (Compl. Ex. A [Sentence Sheet].) Xenos subsequently attempted to withdraw his nolo contendere plea multiple times without success. (Defs.' Mot. to Dismiss Ex. C [State Appellate Docket] at 2-4); *see Xenos v. Hawbecker*, 441 F. App'x 128, 132 (3d Cir. 2011)

---

[1] Xenos has another case also before this Court (Civ. A. No. 11-1488), in which he has sued multiple Northampton County sheriffs, as well as the Sheriff Department and the County, for essentially the same events at issue in this action. Indeed, the Third Circuit has labeled Xenos "a repeat filer" who has "used offensive language in many of his submissions." *Xenos v. Hawbecker*, 441 F. App'x 128, 131 (3d Cir. 2011).

(accepting the validity of Xenos's nolo contendere plea).

On March 3, 2009, Probation Officer Singley issued a detainer for Xenos due to a probation violation. Xenos was arrested at his home by a sheriff who presented him with the detainer and a protection from abuse order issued by Judge Edward Smith. (Compl. II at 5.[2]) On March 5, 2009, Probation Officer Singley filed a petition for review of parole signed by his supervisor, Chief Adult Probation Officer Bartosh, which states that Xenos "violated the technical conditions of his parole supervision by failing to maintain a current and valid address" and by "committing overt acts." (Compl. Ex. B [Petition for Review of Parole].) On that day, the court held a *Gagnon I* hearing and ordered a psychiatric evaluation of Xenos. (Defs.' Mot. to Dismiss Ex. B [Court of Common Pleas Docket] at 19.) On March 20, 2009, the court held a *Gagnon II* hearing and ordered that Xenos be transferred to a mental hospital for no more than ninety days in order to restore competency to proceed with the prosecution. (Compl. Ex. C [Order of Court].) On September 11, 2009, Xenos was released from the mental hospital.

On September 18, 2009, Probation Officer Singley submitted to Judge Smith an order to arrest and detain Xenos that states that Xenos violated the conditions of his supervision by failing to appear as directed and failing to contact the Northampton County Adult Probation Department; Judge Smith issued an order that authorized Xenos's arrest the same day. (Compl. Ex. D [Order to Arrest and Detain]; *see* Court of Common Pleas Docket at 21.) Xenos was arrested on September 21, 2009. (Court of Common Pleas Docket at 1, 21.) The order was vacated the following day. Xenos was released from prison, and the case was closed on November 18, 2009. (*Id.* at 21-22.)

---

[2] Xenos's Complaint consists of two separately paginated documents docketed together. The first, a form for pro se plaintiffs filled out by Xenos, is cited as "Compl. I." The second, a typed document, is cited as "Compl. II." The exhibits cited accompany both documents.

Defendants filed their motion to dismiss on April 4, 2012. By Order of the Court, Xenos had until July 30, 2012 to respond, but failed to do so. While a motion may be granted as uncontested in the absence of a timely response, *see* E.D. Pa. R. 7.1(c), because Xenos is a pro se plaintiff, the Court declines to grant Defendants' motion on that basis. *See Xenos v. Hawbecker*, 441 F. App'x 128, 131 (3d Cir. 2011) (finding dismissal based only on plaintiff's failure to respond inappropriate "unless a plaintiff's failure to oppose a motion can truly be understood to reflect that the motion is unopposed").

## II.   STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim, a district court must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the non-moving party. *See Bd. of Trs. of Bricklayers & Allied Craftsman Local 6 of N.J. Welfare Fund v. Wettlin Assocs.*, 237 F.3d 270, 272 (3d Cir. 2001). "But a court need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Xenos brings this action pro se, the Court will liberally construe his Complaint. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Smith v. Sch. Dist. of Phila.*, 112 F. Supp. 2d 417, 423 (E.D. Pa. 2000).

"Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. Although the federal rules impose no probability requirement at the pleading stage,

a plaintiff must present "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a cause of action. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Simply reciting the elements will not suffice. *Id.*; *see also Phillips*, 515 F.3d at 231. When faced with a motion to dismiss for failure to state a claim, courts may consider the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim. *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004). Additionally, a court may consider "court files, records, and letters of official actions or decisions of government agencies and administrative bodies when considering a Rule 12(b)(6) motion." *Fed. Election Comm'n v. Arlen Specter '96*, 150 F. Supp. 2d 797, 803 n.5 (E.D. Pa. 2001) (internal quotation marks omitted).

The Third Circuit Court of Appeals has directed district courts to conduct a two-part analysis when faced with a Rule 12(b)(6) motion. First, the legal elements and factual allegations of the claim should be separated, with the well-pleaded facts accepted as true but the legal conclusions disregarded. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Second, the court must make a commonsense determination of whether the facts alleged in the complaint are sufficient to show a plausible claim for relief. *Id.* at 211. If the court can infer only the mere possibility of misconduct, the complaint must be dismissed because it has alleged—but has failed to show—that the pleader is entitled to relief. *Id.*

### III. DISCUSSION

#### A. Motion to Dismiss Claims Against Probation Officer Singley

Xenos's allegations against Probation Officer Singley can be distilled into a claim for unlawful probation supervision and two claims for unlawful arrest.

##### 1. *Claim for Unlawful Probation Supervision*

In alleging that his probation supervision was illegal, Xenos states that Probation Officer Singley "visited plaintiff's residence weekly and subjected plaintiff to his agency's conditions of parole/probation, knowing that commonwealth law mandates that conditions of county parole/probation are set my [sic] the sentencing judge exclusively and not by county parole/probation officers nor their agency." (Compl. II at 3.) Xenos's Complaint, however, never specifies when the visits to his home to which he objects occurred. The Court of Common Pleas docket reflects, for example, court-ordered visitation by a probation officer following a *Gagnon I* hearing on September 4, 2008. (Court of Common Pleas Docket at 17; *see also* Petition for Review of Parole ("[After a *Gagnon I* hearing,] [t]he defendant entered into a strict compliance ordered [sic] . . . .").) Since Xenos has provided neither a time frame for nor a description of the home visits at issue, it is impossible for the Court to draw an inference of illegality as to Xenos's probation supervision. *See Youse v. Carlucci*, 867 F. Supp. 317, 319 (E.D. Pa. 1994) (granting motion to dismiss where complaint did not "provide a time for the alleged deprivation, who was responsible, in what manner it was done, or any other details").

Xenos also alludes repeatedly to the impropriety of the sentence underlying his probation, alleging that the court was "void of jurisdiction ab initio" and that the sentence was unlawful, "as there was no factual bases for plea [sic]." (Compl. II at 2.) *Heck v. Humphrey* precludes such a claim

as a collateral attack on the validity of the underlying conviction. 512 U.S. 477, 486-87 (1994) ("We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."). Therefore, Xenos fails to state a claim for unlawful probation supervision.

### 2.     *Claims for Unlawful Arrest*

Under Pennsylvania law, a probation officer may arrest a probationer if the officer has probable cause to believe that the probationer has violated his probation—including by failing to report as required by the terms of his probation. 61 Pa. Stat. § 309.1.[3] This authority to arrest exists even without an arrest warrant. *Id.*; *see also Presley v. Morrison*, 950 F. Supp. 1298, 1331 (E.D. Pa. 1996).

To state a claim for unlawful arrest, therefore, Xenos must establish more than a mere possibility that he was arrested without probable cause. Xenos first alleges that he was illegally served with a protection from abuse order and a detainer on March 3, 2009. (Compl. II at 4.) According to Xenos, two days later, Probation Officer Singley filed a petition for review of parole that "falsely alleged that plaintiff had violated technical conditions of his parole supervision." (*Id.*) Yet a *Gagnon I* hearing was subsequently held on March 5, 2009, and a *Gagnon II* hearing held on March 20, 2009. A *Gagnon II* hearing occurs only if it is determined at the *Gagnon I* hearing that

---

[3] Although 61 Pa. Stat. § 309.1 has been repealed, it was in effect until October 13, 2009, and the events of which Xenos complains ceased on September 22, 2009. (Compl. I at 3.)

6

there is probable cause to conclude that the probationer committed a probation violation. *See Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973). Because the court determined that there was probable cause to believe that Xenos had committed a probation violation, Xenos has not stated a claim that his arrest was illegal.

Xenos next objects to "the re-arrest of plaintiff on the again fraudulent pretext that he had technically violated his illegal intense supervision" on September 18, 2009, based on an order to arrest and detain from Probation Officer Singley alleging that Xenos had failed to appear as directed or to contact the probation department. (Compl. II at 6; Order to Arrest and Detain.) Yet the arrest took place pursuant to a court order to arrest Xenos due to violations of his probation signed by Judge Smith in response to Probation Officer Singley's submission, giving rise to probable cause to make the arrest. (Order to Arrest and Detain.) The Complaint fails to support the allegation that the technical violations attested to by Probation Officer Singley and accepted by the court were a "fraudulent pretext" for his arrest. (Compl. II at 6.) This claim is thus dismissed.

      **B.**      **Motion to Dismiss Claim Against Chief Adult Probation Officer Bartosh**

The only specific allegation against Chief Adult Probation Officer Bartosh in Xenos's Complaint is that she authorized Probation Officer Singley's petition for review of parole on March 5, 2009. Xenos additionally asserts that she "has a history of authorizing petitions for technical violations of county parole or probation without probable cause . . . and with great indifference for probable cause and due process of law." (Compl. II at 4.)

A civil rights claim for supervisory liability will succeed if a plaintiff demonstrates that the supervisor "participated in violating [the plaintiff's] rights, that he directed others to violate them, or that he . . . had knowledge of and acquiesced in his subordinates' violations." *Lopez v. Maczko*,

Civ. A. No. 07-1382, 2008 WL 4083016, at *6 (E.D. Pa. Aug. 28, 2008) (omission in original) (quoting *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190-91 (3d Cir. 1995)) (internal quotation marks omitted). Because Xenos has not stated a claim that Probation Officer Singley violated Xenos's rights, he has similarly not stated a claim that Chief Adult Probation Officer Bartosh "participated in" or "had knowledge of" any such violation.

Supervisory liability is also available where a supervisor "established and maintained a policy, custom, or practice" that directly caused the plaintiff constitutional harm, "with deliberate indifference to the consequences." *Id.* (quoting *A.M. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 578 (3d Cir. 2004)) (internal quotation marks omitted). Xenos's allegations as to Chief Adult Probation Officer Bartosh's regard for Due Process and her past authorizations of probation violation petitions are unsupported and conclusory. For these reasons, the claim against her is dismissed.

### C. Motion to Dismiss Claims Against Northampton County Department of Adult Probation and Northampton County

With regard to the Northampton County Department of Adult Probation and Northampton County, Xenos states only that these entities were "indifferen[t] and fail[ed] to train personnel." (Compl. I at 3.) These allegations are vague and entirely unsupported, and are dismissed as to both Defendants.

## IV. CONCLUSION

Because Xenos has failed to state a claim, the Court will grant Defendants' motion to dismiss. An Order consistent with this Memorandum will be docketed separately.